**AMITY FABRICS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 3828; Protest 65/11623–4095–64.**

United States Customs Court,
Second Division.
May 22, 1969.

George Bronz, Washington, D. C., for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff, New York City, trial attorney), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

RAO, Chief Judge:

The instant protest relates to an importation of twill back velveteen pile fabric which was classified under item 346.24 [1] of the Tariff Schedules of the

---

1. Pile fabrics, in which the pile was inserted or knotted during the weaving or knitting, whether or not the pile covers the entire surface, and whether the pile is wholly or partly cut or is not cut:

   Of cotton:

   \* \* \* \* \* \* \* \* \* \* \*

   Velveteens:
   Plain-back  ........................................ 25% ad val.
   Other, including twill-back:

   \* \* \* \* \* \* \* \* \* \* \*

   Valued over $1.10 per
   square yard ................................... 22.5% ad val.

United States, and assessed with duty at the rate of 22½ per centum ad valorem. Plaintiff claims alternatively that said merchandise is dutiable under paragraph 907 [2] of the Tariff Act of 1930, as modified and supplemented by T.D. 51802 and T.D. 54399, respectively, and as amended by Public Law 86–795,[3] at the rate of 11% ad valorem, or "under one or more of the following TSUS items * * * to wit, Items 355.65, 356.25, 798.00, 798.50, or 799.00, dutiable at 10% or 11% ad valorem," or duty free as not covered by any customs duty validly in force. It may be noted, however, that no valid claim for classification on item 799.00 has been made in this case.

This case was submitted for decision upon a written stipulation of counsel for the respective parties hereto to the effect that the merchandise in question consists of first quality twill back velveteen pile fabric similar in all material respects, including waterproofing, to the merchandise the subject of Amity Fabrics, Inc. v. United States, 51 Cust.Ct. 97, C.D. 2416, appeal dismissed 51 CCPA 129, and therein held to be dutiable at the rate of 11 per centum ad valorem under paragraph 907, Tariff Act of 1930, as modified, supplemented, and/or as amended. The record in said C.D. 2416 was incorporated and made a part of the record in this case. The parties reserved all questions of law.

Although the ultimate question to be determined in the instant case is the proper classification of the subject velve-teens, the resolution of this question depends not upon the character and composition of the cloth, which have been stipulated, but upon the fundamental issue of whether in failing to incorporate a specific provision for waterproof cloth into the Tariff Schedules of the United States the Tariff Commission violated the dictates of the Tariff Classification Act of 1962, Public Law 87–456.

In essence it is the contention of plaintiff that Public Law 86–795, which amended paragraph 907 of the Tariff Act of 1930, was a statutory change in the tariff treatment of waterproof cloth which should have been reflected in the Tariff Schedules of the United States by virtue of section 101(b) (4) (A) of said Tariff Classification Act of 1962, and that the failure of the Tariff Commission to so provide requires classification of the instant merchandise either under paragraph 907 of the Tariff Act of 1930, as amended by said Public Law 86–795, which allegedly has not been validly superseded, or by similitude to woven or knit fabrics made dutiable under the TSUS at 11 per centum or 10 per centum ad valorem, or as an article entitled to free entry as not one covered by any valid provision of the TSUS.

The Government's position in this case is stated in its brief as follows:

* * * the legislative history of the Tariff Classification Act of 1962 clearly indicates that Congress, with complete knowledge thereof, fully approved the elimination of the waterproof cloth

2. Waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, but not in part of india rubber .............. 11% ad val.

————◆——

3. Sec. 2. In order to insure a correct interpretation of the provision "waterproof cloth" in paragraph 907, Tariff Act of 1930, it is hereby declared that it was and is the true intent and meaning of paragraph 907 to limit the term "waterproof", when applied to cloth, "wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber", to cloths of a kind generally used in the manufacture of articles which are designed to afford protection against water to the extent expected in raincoats, protective sheeting, dress shields, umbrellas, and similar articles. Even when cloth possesses water repelling characteristics, it is not classifiable as waterproof cloth within the meaning of paragraph 907, Tariff Act of 1930, unless it is of a kind generally used in the manufacture of articles of the class specified in the preceding sentence.

provision from the revised tariff schedules and its replacement by the provision for coated or filled fabrics in Item 355.65; that section 101(b)(4)(A) is neither relevant nor pertinent hereto; and that the shipment at bar was correctly classified.

In 1954, in the Customs Simplification Act, as then amended, Public Law 768, 68 Stat. 1136, Congress directed the Tariff Commission to make a comprehensive study of the laws prescribing the tariff status of imported articles and to submit a revision and consolidation of those laws which, in the judgment of the Commission, would accomplish, as far as practicable, the following purposes: [4]

(1) Establish schedules of tariff classifications which [would] be logical in arrangement and terminology and adapted to the changes which have occurred since 1930 * * *.

(2) Eliminate anomalies and illogical results in the classification of articles.

(3) Simplify the determination and application of tariff classifications.

The above was to be accomplished without changing rates of duty other than those incidental rate changes which the Commission considered necessary to accomplish its ultimate objective. When such rate changes were foreseen by the Tariff Commission as being necessary the Commission was directed to hold hearings to give interested parties an opportunity to be heard with respect to the probable effect of any such suggested changes on any industry in the United States.

On March 15, 1955, the Tariff Commission submitted to the President and to the Chairmen of the Committee on Ways and Means of the House and the Committee on Finance of the Senate a report discussing some of the problems which the Commission hoped to resolve and some of the standards which it expected to follow.

Following its initial efforts at setting up new tariff enumerations, the Commission released proposed new schedules (at different times between January 1958 and June 1959). During this period public hearings were held at which interested parties were given an opportunity to appear and to present their views relative to the proposed schedules.

On Novmber 15, 1960, the Tariff Commission submitted to the Chairman of the Committee on Ways and Means of the House and the Committee on Finance of the Senate a ten volume report, The Tariff Classification Study. The Study and the proposed schedules contained therein reflected rates of duty in force as of July 31, 1960. Among the matters called to the attention of Congress in this submitting report was the fact that the proposed schedules differed from the 1930 Tariff Act in not including a specific provision for waterproof cotton cloth. In the explanatory comments accompanying the proposed schedules the Commission explained its reasons for omitting a waterproof cloth provision as follows: [5]

The existing tariff provisions with respect to coated or filled fabrics are fragmentary and poorly arranged. Included among them but not specifically designated as a coated or filled fabric, is "waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber", in paragraph 907. The provision for waterproof cloth has been controversial over the years. It has been interpreted as including certain fabrics which are not coated or filled within the meaning ascribed to that term in this subpart (CAD 723). The effect of the court ruling holding so-called water-repellent fabrics to be within this provision in paragraph 907 has been carefully studied, and it does not seem desirable or feasible to establish a classification for fabrics on the basis of water repellency unassociated

4. Customs Simplification Act of 1954, section 101(a).

5. Tariff Classification Study, Schedule 3, part 4, p. 134.

with a coating or filling concept. The provisions for waterproof cloth, therefore, have been assimilated with the coated or filled fabrics in item 355.65.

On September 15, 1960, after the cut-off date of the Tariff Classification Study, to wit July 31, 1960, but before the study was submitted to Congress and to the President, Congress approved Public Law 86–795, section 2,[6] which amended paragraph 907 of the Tariff Act of 1930 by restricting the applicability of said paragraph to cloths "of a kind generally used" for protective purposes. Plaintiff claims that even though Public Law 86–795 was passed specifically as an amendment to paragraph 907 of the 1930 Act, it should have been incorporated into the tariff schedules as finally published in August 1963. Plaintiff bases this contention on a reading of the Tariff Classification Act of 1962, which announced a procedure for adopting and implementing the new tariff schedules. The portions of that act relevant to this question (Public Law 87–456, section 101(b)) provide that the tariff schedules

\* \* \* shall consist of—

(1) the general headnotes and rules of interpretation;

(2) schedules 1 to 8, inclusive; and

(3) the appendix to the tariff schedules; all as set forth in the report of the United States Tariff Commission \* \* \* entitled "Tariff Classification Study, Proposed Revised Tariff Schedules of the United States", dated November 15, 1960, as changed by the "First Supplemental Report" (January, 1962); and

(4) subject to subsection (c), such changes in the provisions identified in paragraphs (1), (2), and (3) of this subsection as the Commission decides—

(A) are necessary to reflect changes in tariff treatment made by statute or under authority of law, arising either before the date of the enactment of this Act or on or after such date of enactment and before the date on which the Tariff Schedules of the United States is published pursuant to subsection (d), or

(B) are otherwise necessary.

In its determinations under this paragraph, the Commission shall apply the standards it applied in its report of November 15, 1960, referred to above.

Plaintiff contends that Public Law 86–795 was a change in tariff treatment and that the Commission was compelled under section 101(b) (4) (A) of the Tariff Classification Act to incorporate that change into the new tariff schedules.

■ Assuming arguendo, though we do not so find, that Public Law 86–795 was a "change in tariff treatment," we nevertheless are of opinion that the instructions given to the Commission in section 101(b) (4) (A) of the Tariff Classification Act were discretionary rather than mandatory and that plaintiff is without grounds to challenge the Commission's use of its discretion.

The statute explicitly provides that the schedules shall include:

[Sec. 101(b)] (4) \* \* \* such changes \* \* \* *as the Commission decides—*

(A) are necessary to reflect changes in tariff treatment \* \* \* [Emphasis supplied].

■ Thus the Commission was specifically authorized to judge whether certain changes were to be incorporated into the new tariff schedules. The fact that changes in tariff treatment may have occurred within the time prescribed in the statute did not *ipso facto* make these changes part of the tariff schedules. We do not doubt that Congress could have provided that all such changes were to be automatically adopted. However, since Congress, under the Customs Simplification Act, had given the Commission the original task of drawing up

6. See footnote 3, *supra*.

the schedules, it was appropriate also to authorize the Commission to decide what subsequent changes should be incorporated into the schedules. The fact that Congress may not have foreseen the particular situation before us when it chose the wording of that particular section of the Tariff Classification Act does not justify construing it in a way which is directly inconsistent with the very words used therein. As stated in Barr v. United States, 324 U.S. 83, 90, 65 S.Ct. 522, 525, 89 L.Ed. 765: " * * * [I]f Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators." Citing Puerto Rico v. Shell Co., 302 U.S. 253, 257, 58 S.Ct. 167, 82 L.Ed. 235; Browder v. United States, 312 U.S. 335, 339, 61 S.Ct. 599, 85 L.Ed. 862.

A further indication that section 101 (b) (4) (A) vested the Commission with discretion is apparent from the final lines of paragraph (4), which provide: "In its determinations under this paragraph, the Commission shall apply the standards it applied in its report of November 15, 1960 * * *." It seems reasonable that, in order to produce unified and coherent schedules, the same standards used in originally drawing up the schedules should also be used when the Commission was deciding whether any subsequent changes should be made therein. The standards[7] provided that the Commission would restate existing tariff treatment to the fullest extent consistent with desirable changes in treatment to *carry out the purposes of the tariff study.*[8]

Thus the standards, which provided a certain amount of flexibility in drawing up the originally proposed schedules, also gave the Commission flexibility to consider whether or not to incorporate certain subsequent changes, depending on whether these changes helped to "carry

out the purposes of the tariff study." Those purposes, as discussed *supra,* were basically to establish schedules which would be more logical and less anomalous than the 1930 Act. In effect the Tariff Commission was authorized to decide that a change in tariff treatment which might have been desirable under the 1930 Act, would not be desirable as part of the proposed schedules in view of the overall objectives of the Customs Simplification Act. The fact that the law had been amended should not restrict the Commission if it thought that, even as amended, the provision was not practical under current conditions. "What is done by the Tariff Commission and the President in changing the tariff rates to conform to new conditions is in substance a delegation, though a permissible one, of the legislative process." Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 305, 53 S.Ct. 350, 354, 77 L.Ed. 796. Citing Hampton & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624; Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525; Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294.

The exhibit "C" attachment to plaintiff's brief reflects the Commission's judgment that Public Law 86–795 should not be incorporated into the new schedules. Said exhibit, a letter (dated February 28, 1963) to plaintiff's counsel from the Tariff Commission in response to his requests to modify certain items of the proposed schedules to reflect the changes resulting from Public Law 86–795, stated:

In the opinion of the Commission, Public Law 86–795 did not remove the problem associated with the existing provision in paragraph 907, Tariff Act of 1930, for waterproof cloth. The Commission continues to believe, as expressed in the explanatory notes relating to schedule 3 (page 134), that it is neither desirable nor feasible to es-

---

7. Listed in the November 15, 1960 report, p. 6, they are really a summary of more detailed standards originally set out in the Commission's 1955 interim report.

8. There were two additional standards listed in the 1960 report which are not relevant here.

tablish a classification for velveteens or other fabrics on the basis of water repellency unassociated with a coating or filling concept. In the circumstances, the Commission is of the opinion that the changes in the new schedules you request are not warranted.

Nothing in the legislative history of the Tariff Classification Act leads us to conclude otherwise than that the Tariff Commission had the discretion to omit certain subsequent changes. In reporting section 101(b) of the bill which eventually became the Tariff Classification Act of 1962 both the House Ways and Means Committee and the Senate Finance Committee stated:

* * * The only changes which can be made in the tariff schedules, after the enactment of the bill, will be those which the *Tariff Commission finds are required to be made* by virtue of legislation, court decisions, or authoritative administrative decisions, all of which necessarily must be reflected in the new tariff schedules. Certain other changes, such as those necessary to correct errors or inadvertent omissions or to clarify language cannot be made until reviewed by the Congress. * * The same standards which governed the Commission in the preparation of the tariff schedules will apply to subsequent Commission action on these schedules. [House Report No. 1415 (87th Cong.), page 4; Senate Report No. 1317 (87th Cong.), page 4.] [Emphasis supplied.] U.S.Code Cong. and Admin.News, p. 1644 (1962).

Since the only changes which could be made were those which the Tariff Commission found were required to be made, we understand this to imply that the Commission was authorized to conclude that certain changes affecting existing provisions of the 1930 Act, were not required to be made in view of the standards which it originally followed. It was only the changes which the Commission *found* were required to be made, *in view of its 1960 standards,* which necessarily had to be reflected in the

new schedules. Thus the statute itself as well as the Senate and House reports convinces us that the Tariff Commission's power to reflect subsequent changes in tariff treatment in the new tariff schedules was discretionary and was to be viewed in relation to its overall objectives as set out in the Customs Simplification Act. Whether that discretion was used wisely is not the question before us because:

* * * It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review. [United States v. George S. Bush & Co., Inc., 310 U.S. 371, at 380, 60 S.Ct. 944, 84 L.Ed. 1259. See also The Best Foods, Inc. v. United States, 39 Cust. Ct. 305, at 307; aff'd United States v. The Best Foods, Inc., 47 CCPA 163, C.A.D. 751.]

■ We find, therefore, that the Tariff Commission had the discretion to disregard the effects of Public Law 86–795 upon the 1930 provision for waterproof cloth, and its use of that discretion in not modifying the tariff schedules to provide *eo nomine* for waterproof cloth is not subject to judicial review.

While we are of the opinion that the above conclusion suffices to dispose of this case on the merits, we are nevertheless inclined to discuss several other aspects of the case which have been urged with much vigor.

■ Were it to be conceded notwithstanding the foregoing that the Commission was under a mandatory duty to reflect in the schedules every change in tariff treatment, it becomes pertinent to consider whether Public Law 86–795 was, in fact, a change in tariff treatment as contemplated by section 101(b) (4) (A) of the Tariff Classification Act.

The effect to be given to amendment of certain statutes is discussed in Suther-

land's Statute and Statutory Construction, 3d ed., 1943, vol. II, sec. 5110, pp. 526–7 as follows:

Where a former statute is amended, or a doubtful meaning of a former statute rendered certain by subsequent legislation a number of courts have held that such amendment or recent legislation is strong evidence of what the legislature intended by the first statute. This rule was well expressed in an Indiana case where the court said, "If it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute."

This was the rule applied in Jordan v. Roche, 228 U.S. 436, 33 S.Ct. 573, 57 L.Ed. 908, wherein the court stated:

* * * The law was not the declaration of a new policy, but a more explicit expression of the purpose of the prior law, made necessary by the judicial construction of that law.

In United States v. Geo. Wm. Rueff, Inc., 41 CCPA 95, C.A.D. 535, our appellate court, in considering the effect of the insertion in the tariff provision for "all binding twine" (paragraph 1622 of the Tariff Act of 1930) of the language "and twine chiefly used for baling hay, straw and other fodder and bedding materials," stated:

* * * About the only thread of continuity we have able to obtain from the authorities cited is that the particular facts involved in each case largely determine the proper interpretation to be placed on subsequent Congressional action. We believe the circumstances here are more than ample to support our conclusion that Congress intended only to clarify the language originally employed in paragraph 1622.

Although there is authority to the contrary tending to suggest that legislative explanation of an earlier measure constitutes evidence that the previous statute meant the exact opposite, upon the theory that the legislature is not presumed to do a useless act, we do not find such inconsistency in the legislation now under consideration to warrant the application of this principle.

Here it appears that ambiguity resulted not from the statutory provision but from an interpretation thereof, which Congress in Public Law 86–795 expressly indicated it had never intended. The legislative purpose to clear up any uncertainties as to "the true intent and meaning of paragraph 907" of the Tariff Act of 1930 to "insure a correct interpretation of the provision 'waterproof cloth' " is plainly stated by the Congress.

If addressing itself to the problems resulting from the classification of cotton cloth as waterproof cloth, Congress had intended to effectuate a change in the law, its language does not so indicate. On the contrary its use of the phrase "was and is" reflects a constancy of attitude, inconsistent with the notion of change. Congress was not only spelling out the meaning to be applied to "waterproof cloth" subsequent to the passage of that amendment, but was also saying that it had intended this to be the understanding and interpretation of "waterproof cloth" when Congress originally passed the provision relating thereto in 1930.

The legislative history of Public Law 86–795 makes it clear that Congress was primarily attempting to plug a loophole in paragraph 907 of the 1930 Act which resulted from what was considered an improper interpretation of the term "waterproof cloth" by the courts. The bill (S. 3828) was originally introduced by Senator Pastore of Rhode Island to help manufacturers of typewriter ribbon, already suffering from the competition of low-priced imports, who were hurt even more when the cloth was temporarily coated with a water repellent substance and then imported at the exceptionally low rate of duty applicable to waterproof cloth. That such was never intended to be the effect of paragraph 907 is apparent from much of the con-

gressional discussions concerning the proposed amendment.[9] Throughout the discussion of the amendment it is apparent that the purpose of Public Law 86–795 was to stop a practice which Congress had never intended to occur in the first place. Since the situation had arisen from an interpretation of the term "waterproof" in a manner contrary to the original intent of Congress, the amendment was passed to clarify the meaning of the term and to prevent the recurrence of what it considered an erroneous interpretation.

9. Mr. Pastore. \* \* \* All we are doing by this amendment is saying the ultimate objective of the cloth—its use—should determine whether or not it should be admitted as waterproof. In other words, if it is to be used for making a tent, it ought to be termed "waterproof." If it is to be used for a raincoat, it ought to be termed "waterproof." But if it is to be used as a "blotter," it should not be made waterproof first, and then, after the cloth gets into the country, washed out and used as a "blotter." [Congressional Record, 86th Cong. 2d sess., vol. 106, part 12, p. 16021.]

\* \* \* \* \*

In other words let us not encourage our friends to contravene the *intent of our law* by finding ways and means, through loopholes and subterfuge, to defeat the very purpose of the law. If it is waterproof cloth, let us say so, and have it come in under the waterproof cloth categories. If it is not for waterproof purposes let us say so. p. 16022. [Emphasis supplied.]

\* \* \* \* \*

Mr. Pastore. \* \* \* The purpose of this amendment \* \* \* is to close a loophole in our tariff law which has led to a practice which, in essence, violates the intent and spirit of our reciprocal trade agreements. [Part 13, p. 17856.]

\* \* \* \* \*

Mr. Bush [of Connecticut]. I fully endorse what the Senator from Rhode Island has said. There is obviously a loophole in the law. *It is not intended that this situation should ever exist,* or that it should continue. \* \* \* [Part 13, p. 17857.] [Emphasis supplied.]

\* \* \* \* \*

Mr. Byrnes of Wisconsin. \* \* \* The new senate amendment in effect *clarifies the meaning of the term "waterproof"* when applied to certain cloths of a kind generally used in the manufacture of articles which are designed to afford protection against water to the extent expected of raincoats, protective sheeting and so forth. \* \* \* [Part 14, p. 18756.] [Emphasis supplied.]

\* \* \* \* \*

Mr. Mills. \* \* \* The Senate amendment endeavors to *correct an interpretation of the provision "waterproof cloth"* which is contained in paragraph 907 of the Tariff Act of 1930. What we are doing is enacting a regulation of the Treasury Department, Bureau of Customs, with respect to what constitutes waterproof cloth. The matter was recommended to us by the Treasury Department and the Department of Commerce, this being necessary, so we were told, to plug a loophole in the Tariff Act in order to prevent materials from coming into the United States that are not to be used for waterproof purposes under the waterproof paragraph at much less tariff duty than they would have to pay if they came through under the proper tariff paragraph. It is that simple.

It has nothing whatsoever to do with the quantity that may come in, but we are determined, as far as the conference committee is concerned, to insure that when things come into the United States from abroad, they must pay the rate of duty prescribed by law and that *they should not be permitted to come in in violation of the intention of the law and the interpretation of the law by the Bureau of Customs.* [Part 14, p. 18756.] [Emphasis supplied.]

\* \* \* \* \*

Mr. Mills. Let me explain to the gentleman what it does. It has to do with the definition of "waterproofing." If material comes into the United States for the purpose of being used for waterproof purposes, it will continue to come under this paragraph. However, if it is not to be used for that purpose—take gingham that is coming in here as dress material, and not to be used as a waterproof material at all, should it be permitted to enjoy a lesser rate of duty because they can smear something on it and make it possible to be classified as a waterproof cloth, and interpreted by the court? We do not think they should be permitted to make a shambles of provisions of the tariff law, and that the people who import these things into the United States ought to pay what the law requires them to pay and *what it is intended they should pay.* [Pp. 18756–57.] [Emphasis supplied.]

Since no intervening change was effected by the enactment of Public Law 86–795, the Tariff Commission was under no compulsion to revise its treatment of waterproof fabrics.

Moreover it is clear from the Tariff Commission's discussion of its policies concerning the waterproof cloth provisions of the 1930 act, that an entirely new approach was contemplated. The conclusions were not predicated upon the considerations which prompted the congressional emphasis upon use in the 1960 amendment to paragraph 907. They rested upon a concept which derived from a coating or filling operation during the manufacturing process. As a consequence the 1960 Public Law gave rise to no conflict requiring adjustment to reflect changes made by statute subsequent to the time the Tariff Commission Studies were first completed.

Especially is this true with respect to the commodity here in question. Velveteen cloth which had been subjected to a waterproofing process and met the so-called cup test for water repellency was waterproof cloth within the standards applied by the courts under the 1930 provision as originally enacted. D. H. Grant & Co., Inc. v. United States, 42 Cust.Ct. 51, C.D. 2065, affirmed United States v. D. H. Grant & Co., Inc., 47 CCPA 20, C.A.D. 723. Velveteen cloth such as here involved which met the cup test for water repellency and was shown to be of a kind generally used in the manufacture of articles designed to protect against water penetration was held to be waterproof cloth as provided in paragraph 907, amended by Public Law 86–795. Amity Fabrics, Inc. v. United States, *supra*. Hence the classification of velveteen was not beneficially affected by the amended paragraph 907.

We address ourselves to one final point. Even assuming arguendo, that we were to agree with plaintiff's contentions we would be faced with a perplexing situation which may be briefly summarized as follows: The Tariff Commission, as one phase of carrying out the Customs Simplification Act of 1954, decided to eliminate the provision for waterproof cloth and assimilate it with the provision for coated or filled fabrics in item 355.65 of the tariff schedules. Said item was one of several which were eventually adopted when Congress approved the Tariff Classification Act. In passing said act Congress simultaneously repealed (by virtue of section 101(a)) the Tariff Act of 1930 in its entirety, thus also repealing paragraph 907. No savings clause was provided. Thus even if we were to find that Public Law 86–795 should have been incorporated into the tariff schedules there would be no place now to include said provision since it interprets the term "waterproof cloth" as that term was used in paragraph 907 of the 1930 Tariff Act, and not only is said paragraph repealed but there is no waterproof cloth category provided for anywhere in the tariff schedules. This court has the power to interpret and enforce the law as written but does not have the power to amend the law or draw up a provision dealing with waterproof cloth. See C. M. Gourdon, Inc. v. United States, 33 Cust.Ct. 253, C.D. 1662, aff'd 43 CCPA 4, C.A.D. 601; Low Wah Suey v. Backus, Commissioner of Immigration, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165.

Since the parties have agreed that the velveteen in question is a pile fabric, it is not classifiable, either directly or by similitude, under item 355.65 or 356.25, which specifically except pile fabrics. Nor is it classifiable under items 798.00, 798.50 or 799.00 since the provision under which the goods were assessed most specifically describes the importation. Nor can they be admitted free of duty for the reason that there is a dutiable provision for velveteen validly in force.

In view of the foregoing considerations, classification of the importations at bar as other than plain back velveteen in item 346.24 of the TSUS will not be disturbed, and the protest claims are overruled.

Judgment will be entered accordingly.