(C.D. 4425)

KAPLAN PRODUCTS & TEXTILES, INC. *v.* UNITED STATES

---

Court No. 68/15673 and eight others

(Decided May 16, 1973)

*Rode & Qualey* (*John S. Rode* of counsel) for the plaintiff.
*Harlington Wood, Jr.*, Assistant Attorney General (*Herbert P. Larsen*, trial attorney), for the defendant.
*Lamb & Lerch* (*David A. Golden* of counsel) as amicus curiae.

MALETZ, Judge: The merchandise involved in this action consists of nine shipments of water-repellent cotton suede fabric with a "Vulca" finish [1] exported from West Germany and entered at the port of New York at various times between June 1966 and June 1968. The fabric was assessed with duty at rates ranging between 14.77 percent and 18.25 percent either under item 322.14 or 322.15 of the tariff schedules, depending upon average yarn number,[2] as—

> Woven fabrics *other than the foregoing*,[3] wholly of cotton:
>
> > Not fancy or figured:
> >
> > \* \* \* \* \* \* \*
> >
> > > Colored, whether or not bleached . . . .

or under item 325.15 as—

> Woven fabrics *other than the foregoing*,[4] wholly of cotton:
>
> > \* \* \* \* \* \* \*
> >
> > Fancy or figured:
> >
> > \* \* \* \* \* \* \*
> >
> > > Colored, whether or not bleached . . . .

Plaintiff claims that the merchandise, which has been treated with a water-repellant finish, is thereby "coated" within the meaning of headnote 2(a) of schedule 3, part 4, subpart C, and properly dutiable at either 10 or 9 percent ad valorem, depending upon the date of entry, under item 356.25,[5] which reads as follows:

> Woven or knit fabrics (except pile or tufted fabrics), of textile materials, coated or filled, not specially provided for:
>
> \* \* \* \* \* \* \*

---

[1] The "Vulca" finish, which is not pertinent here, indicates that the fabric, which is imported for use in the shoe industry, has been dyed free of copper and manganese, thus rendering it suitable for use in the production of vulcanized shoes.

[2] The method of computing "average yarn number" is set out in subpart A, headnote 1(b), schedule 3, part 3.

[3] Italicized matter added, Pres. Proc. 3822, Dec. 16, 1967, T.D. 68-9, effective Jan. 1, 1968.

[4] *Ibid.*

[5] Item 356.25, as modified by T.D. 68-9, effective Jan. 1, 1968, reduced the duty assessment from 10 to 9 percent.

Other:
Of vegetable fibers_____

Subpart C, headnote 2(a), *supra*, provides that—

2. For the purposes of the tariff schedules—
(a) the term "coated or filled", as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been coated or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby; [Emphasis in original.]

The parties have agreed that the merchandise is woven fabric and that it is in chief value of a vegetable fiber, specifically cotton. Thus the single issue is whether, as claimed by plaintiff, the imported material is "coated" within the meaning of the foregoing headnote.

The record establishes that untreated cotton suede fabric, whether or not dyed, is "hydrophilic", that is, it readily absorbs water. However, when the fabric, such as that in question here, is treated with a water-repellent finish or coating, it becomes "hydrophobic" or water repellent. Thus, water applied to the treated surface of the imported merchandise will not penetrate the fabric but will form round droplets which can be shaken off. The water-repellent finish was obtained by applying a high molecular weight material (which has a hydrophobic end grouping composed of long chain carbon atoms) to the entire surface of the individual fibers. This material, which is repellent to water, produces the hydrophobic surface on the cotton fibers.

While the hydrophobic effect of the finish is readily apparent when water is sprinkled on the treated suede fabric, the finish itself is transparent. As plaintiff's expert witness explained (R. 41–42):

* * * In the instance of the water repellent fabric, you cannot see it with the naked eye; you can only see the effect of it. In fact, you cannot see it with a visual microscope. The coating is that finite. It is almost monomolecular in consistence on the surface of the cotton fiber.

Thus, the water-repellent finish used on the fabric in issue leaves the material unchanged in appearance from cotton suede fabric which has not been so treated.[6]

By contrast, other finishes such as rubber or plastic, which are ap-

---

[6] In this connection, plaintiff's expert witness testified with respect to the merchandise under consideration as follows (R. 49):
Q. With regard to Plaintiff's Exhibits 2 and 4 [two of the fabrics in question], can you look at the exhibits and tell whether or not they have been coated?
A. No. Only by knowing that it was water repellent treated and then testing with droplets of water can you know that it is coated.

plied to a base fabric to be used, for example in the production of oil-cloth, tracing cloth or window hollands, create a coated surface which is plainly visible on the fabric.[7]

Against this background, plaintiff contends that the effect of the water-repellent finish or coating on the imported fabric surface—changing it from water absorbent to water repellent—as demonstrated by sprinkling water on the cloth, brings the cotton suede fabric within the headnote definition of "coated". We do not agree.

As used with reference to textile fabrics, headnote 2(a) specifies that the "term *coated or filled* * * * means that any such fabric * * * has been coated or filled * * * so as to *visibly* and *significantly affect the surface or surfaces* thereof otherwise than by change in color whether or not the color has been changed thereby." [Emphasis added in part.]

As we construe this headnote, whether or not a textile fabric comes within its purview does not depend on the characteristics of the fabric with coating or on its intended use. Thus, the fact that the coating may render the cloth rot proof, vermin proof, water repellent or water-proof is immaterial. Rather, under the criteria set out in the definition, the fabric must be coated with a substance which will "*visibly*" affect the surface of the cloth. In short, if the surface has not been "visibly" affected, the textile is not "coated".

It is quite true that the water-repellent finish has significantly affected the surfaces of the imported cotton suede fibers [8] by making them hydrophobic; however, it is manifest from the testimonal evidence and exhibits that the finish has not *visibly* affected the surface of the fabric—indeed, the "coating" is undetectable not only to the naked eye but also under the microscope. In other words, the fact that the finish creates a water-repellent surface is entirely immaterial in the absence of any visible affect thereon. Accordingly, the imported cloth is not "coated" as that term is defined in headnote 2(a).

Although the language of headnote 2(a) is so clear and unambiguous in its meaning as to obviate any need to resort to legislative history to ascertain the Congressional intent,[9] it is significant that the follow-

---

[7] Plaintiff's expert witness, questioned as to cloths such as oilcloth, tracing cloth and window hollands, responded as follows (R. 48) :

 Q. With regard to oilcloth and tracing cloth and window hollands, it is possible to examine them *visually* and see that they have been coated fabrics?

 A. That is true. [Emphasis added.]

[8] Whether the coating or finish used on the cotton suede cloth was applied to *individual fibers comprising* the fabric and not to the *surface* of the fabric, as defendant suggests in raising the question whether the surface was coated at all, need not be reached in the light of our finding.

[9] For a review of the legislative history of the claimed provision see *United States* v. *D. H. Grant & Co., Inc.,* 47 CCPA 20, C.A.D. 723 (1959) ; *Amity Fabrics, Inc.* v. *United States,* 51 Cust. Ct. 97, C.D. 2416 (1963), *appeal dismissed* 51 CCPA 129 (1964) ; *Amity Fabrics, Inc.* v. *United States,* 62 Cust. Ct. 572, C.D. 3828 (1969), *aff'd* 58 CCPA 73, C.A.D. 1006 (1970).

ing excerpt from the Explanatory Notes to the *Tariff Classification Study*, Schedule 3, November 15, 1960, pp. 133–34, supports the court's conclusion that the term "visibly" must be construed in its full literal sense:

> Headnote 2 of subpart C defines the terms "coated or filled" and "nonwoven fabrics". *The definition of "coated or filled" makes an important distinction between textile fabrics on the basis of the surface character thereof.* Most fabrics advanced beyond the grey state have been bleached or colored. *Some of these products may also have been treated for the purpose of rendering them more able to withstand water, or to repel fire, insects, rodents, mildew, or rot. All of these purposes may be accomplished by treatments which do not visibly or significantly affect the surface or surfaces of the fabrics.* The bleaching agent, dye, or other processing material is absorbed into the fibers with only an observable tendency to change their coloration. *None of such products are embraced within the coated or filled classes of fabrics which are included in this subpart. The fabrics in this subpart must have been coated or filled* (whether or not impregnation occurs) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances *"so as to visibly and significantly affect the surface or surfaces thereof* otherwise than by change in color, whether or not the color has been changed thereby".
>
> The existing tariff provisions with respect to coated or filled fabrics are fragmentary and poorly arranged. Included among them but not specifically designated as a coated or filled fabric, is "waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber" in paragraph 907. The provision for waterproof cloth has been controversial over the years. It has been interpreted as including certain fabrics which are not coated or filled within the meaning ascribed to that term in this subpart (CAD 723). *The effect of the court ruling holding so-called water-repellent fabrics to be within this provision in paragraph 907 has been carefully studied, and it does not seem desirable or feasible to establish a classification for fabrics on the basis of water repellency unassociated with a coating or filling concept.* The provisions for waterproof cloth, therefore, have been assimilated with the coated or filled fabrics in item 355.65. [Emphasis added.]

In addition, the intent of the drafters of the proposed revised tariff schedules in preparing headnote 2(a) was clearly explained by Mr. Russell N. Shewmaker, then assistant general counsel of the Tariff Commission, during the hearing held on June 3, 1958, before the Tariff Commission on schedule 3 of the proposed schedules. The following exchange occurred during the testimony of Mr. Howard Richmond who represented a domestic trade association (*Tariff Classification Study*, Schedule 3, November 15, 1960, p. 350):

MR. SHEWMAKER. We are trying to clarify this. We are not trying to anticipate the decision. We don't pretend to be clairvoy-

ant either in that respect. But we are attempting to get meaningful distinctions set forth which would avoid questions being raised concerning the tariff status of these fabrics which have been merely treated for water repellancy, and so on. As we visualize fabrics, there are any number of things that might be done to them without changing their textile character. They might be colored or printed or maybe treated for mildew.

MR. RICHMOND. I was particularly disturbed by resin treated fabrics which are becoming more and more popular and I was worried as to whether resin treated fabrics could not fall under this definition [headnote 2(a)] that you currently may have.

MR. SHEWMAKER. When you say resin treated—

MR. RICHMOND. For crease resistance or one thing or another that don't materially affect the appearance of the fabric but it definitely is a resin substance.

MR. SHEWMAKER. *Well, if it doesn't affect the appearance, we wouldn't regard it under this definition as being within this provision so far as the coated or impregnated is concerned.*

COMMISSIONER SCHREIBER. Mr. Shewmaker, you say we would not regard it. Now, who is the "we"? The Tariff Commission or the Customs Bureau?

MR. SHEWMAKER. Well, when I say "we," I am talking about the intention of those of us who are working with drafting the language of the revised schedules. It was not our intention to catch within the provision for "coated or impregnated" fabrics something which had merely been immersed in a solution and made resistant to mildew or treated for fire resistance or rot or for other purposes. As long as the treatment didn't leave a coating or a filling over the surface of the fabric and in effect give you a coated fabric, of an entirely different character, let us say, to the pile fabric on which it was used, then the term "coated or impregnated" as we prepared this definition was not intended to embrace that. [Emphasis added.]

In conclusion, since we find that the merchandise in issue is not "coated" within the meaning of headnote 2(a), the claim for classification under item 356.25 is overruled. Judgment will be entered accordingly.