PACIFIC TRAIL SPORTSWEAR, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 82-2-00167

Before RE, *Chief Judge.*

(Decided May 11, 1983)

*Rode & Qualey* (*Patrick D. Gill* at the trial; *Michael S. O'Rourke* with him on the brief) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Robert H. White* at the trial and on the brief), for the defendant.

RE, *Chief Judge:* The question presented in this case pertains to the proper classification, for customs duty purposes, of children's jackets imported from South Korea. The jackets were classified by the customs officials as "Other men's or boys' wearing apparel, not ornamented: Of man-made fibers: * * * Not knit," under item 380.84 of the Tariff Schedules of the United States. They were, therefore, assessed with duty at the rate of 25 cents per pound plus 27.5 per centum ad valorem.

Plaintiff protests that classification and contends that the importations are ski garments, and, therefore, are properly dutiable at only 16.5 per centum ad valorem under item 376.56 of the tariff schedules, as modified by T.D. 68-9, which provides for "Garments designed for rainwear, hunting, fishing, or similar uses, wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics." Plaintiff contends that since the jackets were specially designed for use by children in inclement weather, specifically for the sport of skiing, they are excluded from classification under item 380.84 of the tariff schedules.

The pertinent provisions of the tariff schedules are as follows:

*Classified under:*

Schedule 3, Part 6, Subpart F:

   Other men's or boys' wearing apparel, not ornamented:

    *  *  *  *  *  *  *

     Of man-made fibers:

380.84       Not knit ...................................................... 25¢ per lob. +
27.5% ad val.

*Claimed under:*
    Schedule 3, Part 6, Subpart D:
           Garments designed for rainwear, hunting, fishing, or similar uses, wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics, which (after applying headnote 5 of schedule 3) are regarded as textile materials:

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

376.56       Other .................................................. 16.5% ad val.

At the trial, plaintiff introduced extensive testimony to show that the jackets were designed for skiing, which is a use similar to the use of garments for rainwear, hunting, or fishing. Furthermore, plaintiff contends that the jackets' special features (i.e., zippered pockets, ski collar and waterproof material) clearly indicate that they were designed for skiing, and, consequently, fully satisfy the requirements for classification under item 376.56.

Defendant, on the other hand, asserts that the design features which allow the jackets to be used for skiing are common to many short length, cold weather jackets. It also submits that the quilting process to which the merchandise was subjected renders it less waterproof than it would have been otherwise, thus supporting the inference that these garments were not designed for use as rainwear or any other similar use.

In support of its position, plaintiff offered the testimony of its president, Mr. Larry C. Mounger, the first of five witnesses, that the merchandise in issue (a representative sample of which was introduced as plaintiff's exhibit 1) was coated with polyurethane to give the fabric a waterproof quality. Mr. Mounger testified that the merchandise was sold in ski stores and in ski departments of both sporting goods and department stores throughout the United States.

Plaintiff's second witness, Mr. Yosh Nakagawa, president of Osborn & Ulland, Inc., a large, nationwide retailer of sporting goods, corroborated Mr. Mounger's testimony, and added that, although the quilting process may detract, somewhat, from the "waterproofness" of the merchandise, it is necessary in order to allow the garment to "breathe" or ventilate. He stated that it is undesirable to make a garment 100% waterproof for such active wear uses because moisture will condense inside the garment creating chill factors and other conditions detrimental to health. In addition, Mr. Nakagawa testified that the merchandise at issue was particularly

well suited for skiing because it included design features such as a high rise zipper that goes up to the top of the collar line, a tab for ski lift tickets, zippered pockets, as well as the waterproof coating of the fabric.

Plaintiff's third witness was Ms. Marlene Atkinson, plaintiff's vice president in charge of design. Prior to assuming this position she was responsible for the design of the firm's "Ski Stuff" line which includes the importer merchandise. Ms. Atkinson testified that the purpose of the polyurethane coating on the fabric was to make the garment waterproof for outdoor wear by children, and that the jacket was designed to protect a child while skiing in snow and wet conditions. She stated that if water was dropped on the garment, it would "bead up," that is, not soak through, a fact which was stipulated by defendant. Ms. Atkinson, an expert on children's ski wear, also compared plaintiff's jackets to children's snowsuits stating that they have common features and are both manufactured from waterproof nylon. As to the quilting feature, she testified that this was intentionally introduced into the garment to make it attractive, and stressed that this is a common and predominant feature of ski wear.

Ms. Susan Diehm, plaintiff's fourth witness, was a member of the board of directors of the Baron Ski Shop, a specialty ski shop which has purchased and sold plaintiff's "Ski Stuff" line, and stated that it was her best selling line for children. She testified that, because of its features, the merchandise at issue was particularly well suited for skiing. On cross-examination she opined that a child might use the jacket to go to and from school as well as on the ski slope.

Plaintiff's final witness, Mr. Peter Heuwiler, was an Olympic skier and certified ski coach. He testified that he was intimately familiar with the types of ski wear and equipment necessary for skiing and that plaintiff's garment fully met all the requirements of a ski jacket, including that it be water repellent.

It is fundamental in customs classification cases that the Government's classification is presumed to be correct, and that the "burden of proving otherwise shall rest upon the party challenging such decision." 28 U.S.C. § 2639(a)(1). In order to prevail in this case, plaintiff must prove that (1) the jackets are "wholly or almost wholly of fabrics which are coated or filled * * * with rubber or plastics," and (2) that the jackets are "designed for rainwear, hunting, fishing, or similar uses."

To determine whether plaintiff's garments are "almost wholly of fabrics which are coated * * * with rubber or plastics" the court must examine General Headnote 9(f)(iii) which defines the phrase "almost wholly of" as follows:

> (iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding

the fact that significant quantities of some other material or materials may be present;

The meaning of this phrase was considered in *A. N. Deringer, Inc.* v. *United States,* 66 Cust. Ct. 378, C.D. 4218 (1971), where the merchandise consisted of children's snowsuits rather than ski jackets as in the instant case. In *A. N. Deringer,* the question presented was whether the neoprene nylon fabric, which supplied the waterproof character to the snowsuits, was an essential character as described in the general headnote definition. After examining the record, the court stated that:

> [T]he imported snowsuits offer not only warmth to the wearer, but also water resistance. The latter characteristic distinguishes them from other snowsuits and makes them what they are. Therefore, that quality furnishes the essential character to the articles. Since that element is supplied by the coated nylon neoprene fabric, these snowsuits are "almost wholly of" that fabric within the meaning of the tariff schedules.

*Id.* at 385.

Similarly, in the case at bar, it is clear from the examination of the sample (plaintiff's exhibit 1), and the testimony of plaintiff's witnesses, particularly that of Mr. Nakagawa and Ms. Atkinson, that it is the polyurethane coating to the fabric which makes it water resistant and water repellent giving it its essential character. *See H. Rosenthal Co.* v. *United States,* 81 Cust. Ct. 77, C.D. 4769, 460 F. Supp. 1246 (1978), *aff'd,* 67 CCPA 8, C.A.D. 1236, 609 F. 2d 999 (1979); *Kaplan Products & Textiles, Inc.* v. *United States,* 70 Cust. Ct. 166, C.D. 4425 (1973); *A. N. Deringer, supra.*

The next question is whether the jackets are "designed for rainwear, hunting, fishing, or similar uses." It is well established in classification cases that, in addition to testimonial evidence, whether an article is "specially designed" or "specially constructed" for a particular purpose may be determined by an examination of the article itself, its capabilities, as well as its actual use or uses. *United States* v. *Air-Sea Forwarders,* 54 CCPA 67, C.A.D. 907 (1967); *David E. Porter* v. *United States,* 76 Cust. Ct. 97, C.D. 4641, 409 F. Supp. 757 (1976); *Sports Industries, Inc.* v. *United States,* 65 Cust. Ct. 470, C.D. 4125 (1970). Close examination of the merchandise, together with the testimony of the witnesses, particularly that of Mr. Mounger and Ms. Atkinson, clearly shows that plaintiff designed the jacket to be marketed and used as a ski jacket.

The testimony on this point is overwhelming and unrefuted. Nevertheless, defendant argues that, despite the evidence presented at trial, plaintiff's garment is not covered under item 376.56 because it is not sufficiently *waterproof.* Whether a garment or fabric is waterproof is determined by subjecting it to what is termed a "cup test." This test has been described as follows:

A 15 inch square of cloth is placed over a liter beaker, a pocket or cup is formed in the cloth, avoiding folds if possible, and the periphery of the cloth is fastened by such as rubber-bands to the outside of the beaker. Then 0.4 liter of water at room temperature is poured gently into the "cup." If after 24 hours no water appears in the beaker, the fabric is considered to be waterproof.

*United States* v. *D. H. Grant & Co.,* 47 CCPA 20, 23 n.5, C.A.D. 723 (1959).

This test has been approved in cases which dealt with the classification of yard goods as "waterproof cloth," and was intended to apply to cloths generally used in the manufacture of articles which are designed to offer protection against water. *Rohner, Gehrig & Co.* v. *United States,* 64 Cust. Ct. 532, C.D. 4030 (1970). An examination, however, of item 376.56 and its predecessor provisions [1] clearly shows that "waterproofness" of the garment, as opposed to the cloth from which the garment is made, is not, and has never been a requirement of that provision.

Defendant does not point to any cases which have interpreted that item as providing for such a requirement. What is required by item 376.56 is that the garment be "designed for rainwear, hunting, fishing, or similar uses." This requirement necessitates an analysis as to whether or not the coating on the fabric "visibly and significantly" affects the garment's surface rendering it water repellent rather than waterproof. *See H. Rosenthal* and *Kaplan Products, supra.* Thus, as aptly stated by the court in *A. N. Deringer:*

> *The provision is \* \* \* not limited to garments which afford protection against rain but includes wearing apparel used in outdoor sports activities,* such as hunting or fishing, which may be carried on in inclement weather or in or upon water, and where protection from moisture and dampness is desirable. *In our view waterproof snowsuits which are used to protect the wearer from the effect of cold and snow while engaged in outdoor activities are related garments and fall within the language, garments designed for rainwear, hunting, fishing, or similar uses.*

66 Cust. Ct. at 383 (emphasis added).

---

[1] The predecessor provisions of item 376.56 (and item 376.54) TSUS, provided:
Rainwear of textile materials and rubber or plastics:

| | | |
|---|---|---|
| 376.50 | Garments with a textile-fabric base supporting a rubber or plastics coating or covering on the outer surface of the garment .......................................................................................... | 12.5% ad val. |
| | Garments with a textile-fabric outer surface having a rubber or plastics coating or covering on the inner but not on the outer surface of such fabric: | |
| 376.54 | With textile fabric of cotton...................................................................... | 15% ad val. |
| 376.58 | Other......................................................................................................... | 30% ad val. |

The purpose for which Congress amended these provisions in 1965 is set forth in H.R. Rep. No. 1728, 88th Cong., 2d Sess. (1964) at 12 as follows:

Subsection (d) would substitute new clarifying language for the rainwear provided for in items 376.50–376.58. This amendment is related to the proposed changes affecting articles which are wholly or in part of fabrics covered with nontransparent rubber or plastics. The amendment specifically mentions, in addition to rainwear, other related garments made wholly of such fabrics.

This court agrees with the analysis and interpretation of item 376.56 found in *A. N. Deringer,* a case similar to the one at bar. It has long been held that whether *stare decisis* should "be followed or departed from is a question entirely within the discretion of the court." *Hertz* v. *Woodman,* 218 U.S. 205, 212 (1910). Since the question presented and the merchandise at issue in *A. N. Deringer* are so substantially similar to those of the present case, this court has concluded that *stare decisis* applies, and should be followed here. As plaintiff notes, the court in *A. N. Deringer* stated that "a snowsuit has been defined as a child's lined outer garment for winter wear, similar to a *ski suit,* either in one piece or consisting of ankle length pants and a short, snug jacket." 66 Cust. Ct. at 384 (emphasis added). Indeed, in its brief, plaintiff properly observes that "if anything, the case for classification under item 376.56, TSUS, is even more compelling with a ski jacket than with a snowsuit."

Plaintiff's witnesses were thoroughly familiar with the design, sale and use of the garments at issue. Their testimony, which was candid, credible and reliable, established beyond question that the imported ski jackets were designed for use by children engaging in the sport of skiing, a "similar" use under item 376.56.

It is the determination of this court that plaintiff has borne its burden of proof, and that the presumption of correctness has been overcome. Since the imported children's ski jackets were designed for skiing, they are excluded from classification under item 380.84 of the tariff schedules. Hence, they are properly classifiable under item 376.56 as "Garments designed for rainwear, hunting, fishing, or similar uses."

Plaintiff's claim is sustained, and judgment will issue accordingly.