IZOD OUTERWEAR, DIV. OF GENERAL MILLS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 82-1-00011

Before DiCARLO, *Judge.*

(Decided July 23, 1985)

*Siegel, Mandell & Davidson, P.C. (Allan H. Kamnitz* and *Michelle S. Benjamin)* for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office *(Barbara M. Epstein)* for the defendant.

DiCARLO, *Judge:* Garments invoiced as "men's 100% nylon woven jackets" (jackets) imported from Taiwan were classified by the United States Customs Service (Customs) as "Other men's or boys' wearing apparel, not ornamented: * * * Of man-made fibers: Not knit" under item 380.84, Tariff Schedules of the United States (TSUS), at a rate of duty of 25 cents per pound and 27.5% ad valorem.

Plaintiff claims that the jackets are properly classifiable under item 376.56, TSUS, at a rate of duty of 16.5% ad valorem, as:

> Garments designed for rainwear, hunting, fishing, or similar uses, wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics, which (after applying headnote 5 of Schedule 3) are regarded as textile materials * * *. Other.

The parties have filed cross motions for summary judgment and agree that there are no disputed issues of material fact. Plaintiff's motion for summary judgment is granted, and defendant's motion is denied.

The government contends that the garments are not classifiable under item 376.56, TSUS, since they are not made of fabric sufficiently waterproof to pass the "cup test".[1] Since the parties stipulate that the fabric did not pass the "cup test",[2] the question presented in this action is whether the fabric must pass the "cup test" in order for the garments to be classifiable under item 376.56, TSUS.

## I. Legislative History

The government contends that the legislative history of the "coated or filled" and "rainwear" provisions in item 376.56, TSUS, indicate that Congress intended that garments classifiable under item 376.56, TSUS, be made of fabric which passes the "cup test".

"As in all cases involving statutory construction, our starting point must be the language employed by Congress,'" *American Tobacco Co.* v. *Patterson,* 456 U.S. 63, 68 (1982) (citing *Reiter* v. *Sonotone Corp.,* 442 U.S. 330, 337 (1979)). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission* v. *GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980).

## A. "Coated or Filled"

"Coated or filled" is defined for purposes of the Tariff Schedules in Headnote 2(a), Subpart C, Part 4, Schedule 3, TSUS, which provides in part:

For the purposes of the tariff schedules—

> (a) the term "coated or filled," as used with reference to textile fabrics * * * means that any such fabric * * * has been coated or filled with * * * plastics materials * * * so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not their color has been changed thereby * * *.

Defendant admits that "the plastics material used to coat the fabric of which [the garment] is constructed both visibly and significantly affects the surface of the fabric otherwise than by a

---

[1] The "cup test" was described by the Court of Customs and Patent Appeals in *United States* v. *D.H. Grant & Co.,* 47 CCPA 20, 23 n. 5, C.A.D. 723 (1959):

A 15 inch square of cloth is placed over a liter beaker, a pocket or cup is formed in the cloth, avoiding folds if possible, and the periphery of the cloth is fastened by such as rubberbands to the outside of the beaker. Then 0.4 liter of water at room temperature is poured gently into the "cup." If after 24 hours no water appears in the beaker, the fabric is considered to be waterproof.

[2] The parties agree that the jacket is constructed of 100% nylon fabric, coated on one side with a synthetic material composed of acrylic and toluene; that the non-coated side of the fabric forms the outer surface of the garment; and that the garments are regarded as textile materials after applying headnote 5 of Schedule 3.

change in color" and that the "fabric used to manufacture [the garment] is coated' within the tariff understanding of the term."[3]

Nevertheless, defendant contends that the legislative history of the headnote requires "coated" fabric to pass the "cup test". Defendant points to the *Tariff Classification Study of 1960*[4] which says that the former provision for "waterproof cloth" was "assimilated with" the provision for "coated or filled" fabric when the Tariff Schedules were enacted in 1962.[5]

*Webster's Third New International Dictionary* 132 (1981) defines "assimilate" as "to appropriate and transform or incorporate into the substance of the assimilator." The "assimilator" in this instance was the tariff provision for "coated or filled" fabrics. The requirements of the former tariff provision for "waterproof cloth" were "transformed" or "incorporated" into the requirements for "coated and filled" fabrics, not the reverse. The Tariff Schedules do not provide for "waterproof cloth". If Congress intended that "coated or filled" fabrics be "waterproof" it could have simply included that requirement in the headnote. But it did not.

The Court finds that the legislative history of the provision for "coated or filled" fabric is consistent with the plain meaning of Headnote 2(a), Subpart C, Part 4, Schedule 3, TSUS and that garments classifiable under item 376.56, TSUS, must be made wholly or almost wholly of fabric which is "coated or filled" within the plain meaning of the headnote.

---

[3] Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, paragraphs 11, 12; Defendant's Response to Plaintiff's Statement, paragraph 1.

[5] The *Tariff Classification Study*, Schedule 3, at 134 (1960) states regarding the headnote definition of "coated or filled":

> The existing tariff provision with respect to coated or filled fabrics are fragmentary and poorly arranged. Included among them but not specifically designated as a coated or filled fabric is "waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber" in paragraph 907. The provision for waterproof cloth has been controversial over the years. It has been interpreted as including certain fabrics which are not coated or filled within the meaning ascribed to that term in this subpart (CAD 723) [*United States* v. *D.H. Grant & Co., supra*]. The effect of the court ruling holding so-called water-repellent fabrics to be within this provision in paragraph 907 has been carefully studied, and it does not seem desirable or feasible to establish a classification for fabrics on the basis of water repellency unassociated with a coating or filling concept. *The provisions for waterproof cloth, therefore, have been assimilated with the coated or filled fabrics in item 355.65.* [Emphasis added]

Paragraph 907 of the Tariff Act of 1930, as modified by T.D. 51802, provided for "waterproof cloth". In *United States* v. *D.H. Grant & Co.*, the Court of Customs and Patent Appeals held that cloth must be "substantially impervious" to water to be classified as "waterproof cloth" under paragraph 907 and that "if cloth passes the cup test' or equivalent tests, it has the property of being substantially impervious' to water for tariff purposes." 47 CCPA at 26.

Paragraph 907 was amended in 1960 by Public Law 86–795, sec. 2, 74 Stat. 1051, to require "waterproof cloth", in addition to being substantially impervious to water, also to be "of a kind generally used in the manufacture of articles which are designed to afford protection against water to the extent expected in raincoats, protective sheeting, dress shields, umbrellas and similar articles." *See Rohner, Gehrig & Co.* v. *United States*, 64 Cust. Ct. 532, 535, 542, C.D. 4030 (1970).

## B. "Rainwear"

Defendant also argues that the legislative history of the term "rainwear" in item 376.56, TSUS, indicates that Congress intended garments classified under that item to be made of fabric sufficiently waterproof to pass the "cup test".

Item 376.56, TSUS, was enacted by Congress in 1965[6] to supercede items 376.50 and 376.58, which provided for "rainwear".[7] The scope of these items was discussed in the *Tariff Classification Study*, Schedule 3, 227 (1960) as follows:

> * * * [D]omestic producers of rainwear have asked that attention be given to the present uncertainties and anomalies involved in the classification of rainwear made of textile fabrics which have been coated or filled with rubber or plastics. Items 376.50 through 376.58 would provide for such rainwear. It is understood that such rainwear is usually in chief value of rubber or plastics when such materials are on the outer surface of the garment * * *; and that the fabric is usually the component of chief value if it is expose to view and the rubber or plastic *rainproofing* is not exposed. The rates used in the proposed provisions reflect this distinction * * * [Emphasis added].

Defendant contends that this indicates that "rainwear" under the former items 376.50 and 376.58, TSUS, was intended to provide for garments made of fabric which passed the "cup test" since "rainproof" is defined as "impervious to rain"[8] and Customs jurisprudence, *see e.g. D.H. Grant & Co.,* considered fabric "substantially impervious to water" if it passed the "cup test".

But this Court has ruled that garments need not pass the "cup test" to be classifiable under item 376.56. In *A. N. Deringer, Inc.* v. *United States,* 66 Cust. Ct. 378, C.D. 4218 (1971), the Court stated that item 376.56 was

> *not limited to garments which afford protection against rain* but includes wearing apparel used in outdoor sports activities, such as hunting or fishing, which may be carried on in inclement weather, or in or upon water, and where protection from moisture and dampness is desirable [emphasis added].

---

[6] Tariff Schedules Technical Amendments Act of 1965, P.L. 89–241, 79 Stat. 933 (TSTAA).

[7] *See* Tariff Classification Act of 1962, P.L. 87–456. These predecessor provisions to item 376.56 (and item 376.54, TSUS, which provides *inter alia* for rainwear "of cotton"), provide:

Rainwear of textile materials and rubber or plastics:

| | | |
|---|---|---|
| 376.50 | Garments with textile-fabric base supporting a rubber or plastics coating on the outer surface of the garment | 12.5% ad val. |
| | Garments with a textile-fabric outer surface having a rubber or plastics coating or covering on the inner but not on the outer surface of such fabric: | |
| 376.54 | With textile fabric of cotton | 15% ad val. |
| 376.58 | Other | 30% ad val. |

[8] *See* Webster's *Third New International Dictionary*(1981) 1876.

66 Cust. Ct. at 383.[9] This interpretation was adopted in *Pacific Trail Sportswear* v. *United States,* 5 CIT 206, 210–11 (1983), the only other opinion to construe item 376.56. In *Pacific Trail,* the Court held that the snowjacket at issue need not pass the "cup test" for classification under item 376.56, TSUS.

Congress did not mention a "rainproof" requirement when it repealed the "rainwear" items in 1965 by enacting item 376.56, TSUS, which includes within its coverage garments designed for hunting, fishing, or similar uses,[10] and the Court will not infer one to deviate from the ordinary meaning of the language of the tariff provision.[11]

## II. Defendant's Design Arguments

Defendant also argues that the jackets are not "designed for rainwear, hunting, fishing or similar uses" within the meaning of item 376.56, TSUS, because their fabric does not pass the "cup test".

The term "designed for" means "peculiarly and specially fitted" for the particular needs and requirements of the named articles. *See Automotive Tire Service, Inc.* v. *United States,* 66 Cust. Ct. 305, C.D. 4208 (1971); *American Astral Corp.* v. United States, 62 Cust. Ct. 563, C.D. 3827 (1969). Item 376.56 is not a "chief use" provision. A garment under item 376.56 could be "peculiarly and specially fitted" for the special needs of a variety of activities.

Where there is an enumeration of specific words of description (*e.g.,* "rainwear, hunting, fishing") followed by a general term (*e.g.,* "other similar uses") the rule of *ejusdem g eneris* aids in statutory interpretation. *See Merck & Co.* v. *United States,* 19 CCPA 16, 18, T.D. 44852 (1931). Under the rule of *ejusdem generis,* which means "of the same kind", where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. *See European Trading Co.* v. *United States,* 19 CCPA 82, 86, T.D. 45225

---

[9] The "cup test" is not mentioned in *Deringer.* The Court coated with neoprene which offered "water resistance", and made coated with neoprene which offered "water resistance", and made the snowsuits "waterproof", 66 Cust. Ct. at 384–85, but the meaning of those terms was not defined.

[10] The purpose of the 1965 amendment is set forth in the report of the House Ways and Means Committee:

Subsection (d) would substitute new clarifying language for the rainwear provided for in item 376.50–376.58. This amendment is related to the proposed changes affecting articles which are wholly or in part of fabrics covered with nontransparent rubbers or plastics. The amendment specifically mentions, in addition to rainwear, other related garments made wholly or almost wholly of such fabrics.

House of Representatives Report No. 342, 89th Cong., 1st Sess., 12.

[11] No indication of legislative intent known to the Court mentions the "cup test" or any other standard of water repellency. In the *Summaries of Trade and Tariff Information* published by the Tariff Commission as a commentary on the TSUS in 1968, six year after enactment of the TSUS, garments which would be classified under item 376.56 were described as follows:

Men's and boys' raincoats; parkas; parka suits, including pants and hoods; hunting and fishing vests; and jackets are typical of the garments included here; also included are women's, girls', and infants' raincoats, parka jackets, and parka suits. Most of the textile fabric used in these garments is of cotton, rayon, or nylon that has been coated, filled, or laminated, with rubber or plastics. These garments are relatively inexpensive and compete with all-plastic or all-rubber rainwear, with low-valued all fiber rainwear, and with low valued rainwear with nontransparent rubber or plastic on the outside of the garment.

*Summaries of Trade and Tariff Information,* Schedule 3, Volume 5, (textile furnishings and apparel) at 139–40 (1968).

314

(1935); *see also* 2 R. Sturm, *Customs Law and Administration,* § 51.10 at 48–51 (1984).

Applying the rule to item 376.56, TSUS, the Court must determine what characteristics are shared by garments designed for "rainwear", "hunting", and "fishing", and whether the jackets have these characteristics.

Drawing on its contention that "rainwear" is made of fabric which must pass the "cup test", defendant argues that the primary characteristic shared by garments designed for rainwear, hunting, or fishing is that they are made of fabric which passes the "cup test".[12]

But, again, the Court has held that *garments* need not pass the "cup test" to be classifiable under item 376.56, TSUS, which:

> includes wearing apparel used in outdoor sports activities, such as hunting or fishing, which may be carried on in inclement weather, or in or upon water, and *where protection from moisture and dampness* is desirable [emphasis added].

*A.N. Deringer, Inc.* v. *United States,* 66 Cust. Ct. 378, 383, C.D. 4218 (1971). *See also Pacific Trail Sportswear* v. *United States,* 5 CIT 206, 210–11 (1983).[13]

Defendant attempts to distinguish these cases, arguing that they do not decide whether a garment may be "designed for rainwear, hunting, fishing, or similar uses" if the *fabric* does not pass the "cup test". But defendant gives no reason why a characteristic of a garment's fabric should determine whether a *garment* is "designed for" particular activities.

It is not disputed that plaintiff's jacket is designed to be worn while participating in outdoor sports activities during inclement weather, including light to moderate rain.[14] In the opinion of the Court, plaintiff's merchandise fulfills the design requirement of item 376.56, TSUS, as that provision has been defined in the *A.N. Deringer* and *Pacific Trail* decisions.

III. CONCLUSION

Defendant would exclude from the coverage of item 376.56, TSUS, garments designed, marketed, and used "for rainwear, hunting, fishing or similar uses" made of fabric which is "coated or filled" within the plain meaning of the headnote which is not sufficiently

---

[12] The Court agrees with defendant that whether a garment is "designed for rainwear, hunting, fishing, or similar uses" within the meaning of item 376.56 "is a legal determination, not an issue of fact, *per se.*" Defendant's Response to Plaintiff's Statement of Material Facts as to which there is no Genuine Issue to be Tried. ¶¶ 15, 17.

[13] In *Pacific Trail* the Court stated:

> An examination * * * of item 376.56 and its predecessor provisions clearly shows that "waterproofness" of the garment, as opposed to the cloth from which the garment is made, is not, and has never been a requirement of that provision.
>
> Defendant does not point to any cases which have interpreted that item as providing for such a requirement. What is required by item 376.56 is that the garment be "designed for rainwear, hunting, fishing, or similar uses." This requirement necessitates an analysis as to whether or not the coating on the fabric "visibly and *significantly*" affects the garment's surface rendering it water repellent rather than waterproof.

5 CIT at 211.

[14] Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, paragraphs 15, 16; Defendant's Response to Plaintiff's Statement, paragraphs 15–17.

waterproof to pass the "cup test". If Congress intended this result it could, and should, have stated its intention in the language of the tariff provision or headnote. "[T]he intent of Congress to impose or increase a tax upon imports should be expressed in clear and unambiguous language." *Eidman* v. *Martinez,* 184 U.S. 578, 583 (1901).

Item 376.56, TSUS, requires that garments be composed wholly or almost wholly of "coated or filled" fabric and that they be designed for rainwear, hunting, fishing or similar uses that require protection from moisture and dampness. The item does not require that the fabric of the garments pass the "cup test".

Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied. Judgment will be entered accordingly. So ordered