The Court denies defendant's request for sanctions against the government.

FAMOUS RAINCOAT CO., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 88–10–00769

(Decided August 15, 1990)

*Barnes, Richardson & Colburn* (*Sandra Liss Friedman* and *David Elliott*) for the plaintiff.

*Stuart M. Gerson*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Nancy M. Frieden*) and (*Karen P. Binder*, United States Customs Service, Of Counsel) for the defendant.

### BACKGROUND

MUSGRAVE, *Judge:* The merchandise underlying this classification action consists of girls' jackets imported by the Famous Raincoat Company ("Famous Raincoat"). The imports all conform to one particular style (#9514). The outer shell of these jackets is made up primarily of a nylon taffeta fabric which is coated with an acrylic that imparts a degree of water resistance to the nylon. This acrylic coating also gives the nylon fabric a certain "sheen," thereby visibly affecting the surface of the fabric.

The outer shell of the jackets also contains a certain amount of cotton corduroy, which is not coated with any kind of acrylic, or other plastic or rubber. The corduroy trim, inlaid along the sleeves and at the back yoke of the garment, is not water resistant or water repellent, nor is the corduroy backed by the acrylic-coated nylon taffeta fabric.

The U.S. Customs Service ("Customs") classified the jackets under item 384.91 TSUS, as "other girls' wearing apparel, not ornamented, of woven man-made fiber" with duty assessed at 17 or 18 cents per pound +27.5% *ad valorem*. Plaintiff claims that the proper item in the TSUS applicable to these imports is 376.56:

SCHEDULE 3. TEXTILE FIBERS AND TEXTILE PRODUCTS

*Part 6. Wearing Apparel and Accessories*

> Garments designed for rainwear, hunting, fishing, or similar uses, wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics, which (after applying headnote 5 of schedule 3)[1] are regarded as textile materials:
>
> Other:
>
>> Coats and jackets:
>>
>>> Womens', girl's and infants' . . . . . . . . . . . 10.6% *ad val.*

Famous Raincoat contends that the imported merchandise is wholly or almost wholly of man-made fabrics which are coated or filled with rubber or plastics, visibly affecting the surface of the fabric and rendering the surface water repellent.[2] Because the garments are allegedly designed for skiing, plaintiff argues they should then fall within the scope of item 376.56, as garments designed for rainwear, hunting, fishing or *similar uses* (skiing being a similar use).

The government, however, asserts that the presence of a strip of corduroy along the center of each sleeve and of a triangular patch of corduroy at the yoke of the jackets renders the garment unsuitable for the purposes enumerated in item 376.56 TSUS, which corduroy also precludes the fabric from being considered wholly or almost wholly coated, filled or laminated with rubber or plastics. Therefore, the government maintains that Customs' classification of the jackets under item 384.91 TSUS should be sustained.

FINDINGS OF FACT

After discovery concluded in this case, plaintiff requested that the Court grant it leave to file a motion for summary judgment. The government opposed that motion, claiming that genuine issues of material fact existed, thus precluding a Rule 56 motion. Specifically, the government disputed the size, description, character, function and general effect of the corduroy inserts noted above.

---

[1] This headnote reads in pertinent part:

Except as otherwise provided * * * in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics * * * the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that * * * the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

[2] Plaintiff seems to have couched its position in these terms based on the definition of "coated or filled" found in Headnote 2(a), Subpart C, Part 4, Schedule 3, TSUS:

(a) the term "coated or filled," as used with reference to textile fabrics * * * means that any such fabric * * * has been coated or filled with * * * plastics materials * * * so as to *visibly and significantly affect the surface* or surfaces thereof otherwise than by change in color * * * (emphasis added).

The government's claim that this dispute rose to the level of a material fact was, in fact, specious.[3] The government never disputed the *presence* of this corduroy fabric on the jackets. Their real dispute concerned the legal effect this presence has on the interpretation of the TSUS; to wit, whether the corduroy inserts prevent a finding that the jackets are "designed for rainwear * * * or similar uses" and are "wholly or almost wholly of fabrics which are coated [with rubber or plastics]" within the meaning of item 376.56 TSUS.

Nonetheless, plaintiff's motion was denied on the basis of the government's assertion that genuine issues of fact existed. Trial took place on August 9, 1990. Plaintiff presented one witness, Mr. Richard Marcus, Vice President of Famous Raincoat. He testified that during his 17 years of employment with the company, it had sold skiwear: suits, bibs, pants and jackets. The garment at issue was designed for girls ages 4–14. Approximately 33,000 of the jackets were entered and sold to J.C. Penney for resale in their mail order catalogs. They contained decorative corduroy "inserts"[4] for stylistic and functional reasons. Mr. Marcus, who designed the jackets at issue with the approval of children's outerwear buyers from J.C. Penney, testified that corduroy trim, at the time of these imports (1986–87), was considered an appealing element of the jacket's overall style, giving it a more "luxuriant" look. The corduroy trim, composed entirely of cotton, also provided "breatheability" to the jacket and allowed perspiration to evaporate. The corduroy trim, according to Mr. Marcus, comprised not more than two per cent of the total material of the jacket, but if challenged, he would concede the total corduroy content as being three or four per cent. No subsequent challenge arose.

The government presented two witnesses, the first of whom presented testimony not particularly relevant or helpful to the defense. That witness, Ronald Breakstone, participates in running a family business that manufactures industrial outerwear for use in cold storage facilities. The company also manufactures a small amount of hunting and fishing outerwear. From 1973–75, the company also manufactured a line of outdoor sportswear for snowmobile drivers and riders, but has since discontinued that line. The witness testified that he had no experience in the design, manufacture or sales of skiwear. As to the corduroy inserts on the jacket at issue, Mr. Breakstone testified that if they became sufficiently waterlogged, moisture would wick through to the poly-

---

[3] For instance, in its papers opposing the motion for leave to file for summary judgment, the government noted plaintiff's allegation that the corduroy sections on the sleeve are one inch wide, while defendant's position was that they measure 1-1/2" in width. A half inch difference in width cannot believably be characterized as a material issue of fact.

[4] Mr. Marcus also testified that Style 9514 had corduroy "inlays," as opposed to "overlays," the difference being that the former are stitched to the edges of the main material (thus forming an integral part of the main material), while the latter is stitched on top of the main material.

Famous Raincoat, in response to the classification dispute with Customs over Style 9514, re-designed the girls' ski jacket with corduroy overlays. Although this design is less attractive, Mr. Marcus testified that it was more desirable to alter the design of the jacket and receive the lower rate of duty available under item 376.56 TSUS, and accommodate the Customs Service, rather than prolong the dispute.

ester fill and possibly to the inner lining of the garment. In mere "damp" conditions, Mr. Breakstone testified, there would be negligible seepage through the inserts into the jacket.

The government's final witness, Mr. William Raftery, serves as a National Import Specialist with Customs. As an expert on classification, he testified that the absorbent nature of the corduroy trim, and its position on the garment in areas most likely to suffer exposure to moisture, would allow water to enter the jacket, thus rendering the garment non-waterproof and non-water resistant. This characteristic, Mr. Raftery opined, would remove the import from classification under item 376.56 TSUS, and allow classification under item 384.91 as "other" garments. The government also introduced, and had Mr. Raftery identify, a water resistant ski jacket without inserts (all of one fabric) which had been entered under item 376.56 TSUS. Mr. Raftery did not challenge the use of the jackets at issue as ski jackets.

Based on this testimony, it is the finding of this Court that the winter garments imported by plaintiff are designed, manufactured, labelled and sold as ski jackets. This finding does not preclude the actual use of the jackets for other outdoor winter activities. Given that the jackets are designed to fit girls ages 4–14, it is indeed likely that the winter jackets are worn to walk to school, to play in the snow, to ice skate, and for a variety of other outdoor activities.

The Court also finds that the corduroy inlays in Style 9514 represent not more than four per cent of the total fabric of the jacket, the vast majority of that fabric being acrylic-coated nylon taffeta. While the cotton corduroy fabric possesses no waterproof or water resistant qualities, the Court finds the nylon fabric of the garments to be water repellent. Because the latter fabric constitutes 96% of the jacket's composition, the Court also finds the garments to be water resistant.

### QUESTIONS OF LAW

One legal question is presented: whether the garments were properly classified by Customs as "other wearing apparel" under item 384.91 TSUS, or whether item 376.56 TSUS presents a more accurate classification for the imports, as garments designed for rainwear or similar uses, and made of fabric almost wholly coated with plastics. The Court will analyze this issue within the dual requirements of item 376.56 TSUS:

1. Whether the merchandise is designed for rainwear, hunting, fishing or similar uses, and
2. Whether the merchandise is wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics, which are regarded as textile materials.

Both of these questions must be answered affirmatively to overcome the presumption of correctness which attaches to Customs' classification.[5] The outcome hinges on the legal significance of the presence of the corduroy trim inserted into the jackets.

Although no trial briefs were submitted in this case,[6] the parties' respective legal positions are clearly outlined in their papers supporting and opposing the motion for leave to file a motion for summary judgment. Plaintiff importer relies on *A.N. Deringer, Inc.* v. *United States*, 66 Cust. Ct. 378, C.D. 4218 (1971) to advance its claim.[7]

In *Deringer*, plaintiff challenged Customs' classification of three styles of waterproof snowsuits, composed of an outer shell of neoprene-coated nylon, with a rayon quilted lining. The government assessed duties under item 382.04 TSUS, "other women's, girls', or infants' wearing apparel, ornamented, of man-made fibers," while the importer pressed for classification under item 376.56 TSUS, "garments designed for rainwear, hunting, fishing or similar uses." Thus, a nearly identical issue was presented as in the case at bar.

As to design, no specific testimony was presented in the *Deringer* trial (as it was here). The Court noted that the TSUS originally provided for rainwear materials and rubber or plastics, 66 Cust. Ct. at 382, but was amended to cover not just articles which protect against rain, but also "wearing apparel that may be used in outdoor sports activities, such as hunting or fishing, which may be carried on in inclement weather or in or upon water, and where protection from moisture and dampness is desirable." *Id.* at 383. Therefore, the Court held that snowsuits designed to protect the wearer from the effect of cold and snow while engaged in outdoor activities are garments which fall within the purview of item 376.56 TSUS. *Id.*

Similarly, the jackets in this case are designed "to be worn during skiing, ice skating, or other outdoor winter activities," *see* Complaint, § 12 at 3, which allegation was admitted to by the government in its answer. During the trial, government counsel refused to concede that this ad-

---

[5] Following the pronouncement of the Court's judgment at the close of the trial, government counsel telephoned these chambers to insist that one legal issue had not been ruled upon; namely, whether the fabric of the imported jackets was wholly or almost wholly coated with rubber or plastics.

As with most classification cases, however, only *one* issue is presented here: the correctness of Customs' classification. Although the TSUS item at issue has two requirements, these are not separate issues. Thus, the Court's judgment entirely resolved the legal issue presented.

[6] During the telephone call referenced in footnote 5, government counsel also suggested that the Court should have requested trial briefs to outline the parties' positions on the "unresolved" legal issue.

As noted above, no legal issue was left unresolved by the Court's judgment. Even if the import of the Court's judgment was unclear to government counsel, the overwhelming weight of the evidence against Customs' classification should have suggested to the defendant that any further legal gymnastics, *i.e.*, submission of additional briefs, would be a waste of limited judicial resources.

[7] Plaintiff also cites *Pacific Trail Sportswear* v. *United States*, 5 CIT 206 (1983) and *H. Rosenthal Co.* v. *United States*, 81 Cust. Ct. 77, C.D. 4769, 460 F. Supp. 1246 (1978), *aff'd sub nom. United States* v. *H. Rosenthal Co.*, 67 CCPA 8, C.A.D. 1236, 609 F.2d 999 (1979). These cases are alleged to relate to defendant's admission that the 201T nylon taffeta which represents the principal fabric of the outer shell of the imported ski jackets is "coated [with rubber or plastics]." The two cases are alleged to expound upon the meaning of that phrase.

A more complete analysis of that phrase is contained in *Izod Outerwear, Div. of General Mills, Inc.* v. *United States*, 9 CIT 309 (1985), which interprets the term "coated or filled," *id.* at 310–11, based on the definition set forth in the Schedule 3 headnote, a partial text of which appears in footnote 2.

mission meant the garment had been designed for skiing. It relied on the "philosophical" meaning of the word "or", contained in § 12 of the complaint, as opposed to "and." Supposedly the disjunctive would designate skiing as an activity distinct from "other outdoor winter activities," while the conjunctive would include skiing as "[an]other outdoor winter activity."

This distinction, which occasioned a motion by the government during trial to amend its answer and replace "or" with "and" (which motion was denied), matters not in the interpretation of item 376.56 TSUS. As *Deringer* clearly held, garments "which are used to protect the wearer from the effect of cold and snow while engaged in outdoor activities are related garments [to those designed for rainwear, hunting and fishing] and fall within the language [of item 376.56 TSUS]." 66 Cust. Ct. at 383. All that is required is a showing that the jacket at issue is designed for use as rainwear, or for hunting, fishing, or similar uses. Those uses are not limited to skiing.

Even if the Court were to hold that the jackets are not designed for use as skiwear, but for general use as winter garments designed to protect the wearer from cold and snow, the garment would still qualify for classification under plaintiff's claimed provision of the TSUS. The canon of statutory construction known as *ejusdem generis* would support such a holding. According to this canon, which literally means "of the same kind," where an enumeration of specific words in a statute is followed by a general word or phrase, the general word is deemed to refer to things of the same kind as those specified in the statute.

In *Izod Outerwear, Div. of General Mills, Inc.* v. *United States,* 9 CIT 309 (1985), the Court applied the canon of *ejusdem generis* to the phrase "garments designed for rainwear, hunting, fishing or similar uses" as the phrase appears in item 376.56 TSUS. The Court concluded that the jacket at issue was designed to be worn while participating in outdoor sports activities during inclement weather, including light to moderate rain. 9 CIT at 314. Thus, the merchandise was held to fulfill "the design requirement of item 376.56 TSUS, as that provision has been defined in the *A. N. Deringer* and *Pacific Trail* decisions." *Id.*[8]

Although *Izod* made no direct finding that "outdoor sports activities" were of the same kind as hunting or fishing (perhaps so as not to state the obvious), this Court would have little problem holding that garments designed for use in virtually any outdoor winter activities (such as skiing) are "of the same kind" as garments designed for rainwear, hunting, or fishing, according to the principle of *ejusdem generis.*

The testimony adduced at trial, however, proved that the imported jacket here was designed, manufactured, labelled and sold as skiwear. Because skiing is an outdoor winter activity that is similar to hunting and fishing, the Court holds that this garment is designed for rainwear,

---

[8] The issue in *Izod* was somewhat different than that presented here: whether garments need to pass the "cup test" for waterproofness to be classified under item 376.56 TSUS. The Court resolved that issue in the negative.

hunting, fishing or similar uses within the meaning of item 376.56 TSUS.

With an affirmative answer to the design question, the Court must next address whether the garments are wholly or almost wholly of fabrics which are laminated, coated, or filled with rubber or plastics. Defendant contends that the insertion of sections of corduroy material results in an article that is not within the meaning of item 376.56 TSUS because that article is not wholly or almost wholly made of fabrics that have been laminated, coated or filled with rubber or plastic.[9] Thus, the presence of uncoated strips of cotton corduroy material along the center of each sleeve and at the back yoke of the jacket would invalidate the classification urged by plaintiff, argues the government.

Famous Raincoat again relies on *Deringer* to buttress its claimed classification. That Court noted the definition of "almost wholly of" found in General Headnote 9(f)(iii) of the TSUS:

> (iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present.

The Court went on to examine several decisions interpreting this General Headnote, none of which involved merchandise similar to the snowsuits at issue there, and the jackets at issue here. By reviewing those decisions, and relying on the dictionary definition of "snowsuit," the Court was able to conclude that the water resistant quality of the snowsuits furnished the essential characteristic of the articles, thus rendering them "almost wholly of" the fabric cited in item 376.56 TSUS, 66 Cust. Ct. at 384–85.

Here, the government attempted to prove that the insertion of absorbent corduroy trim in places on the jacket most exposed to moisture, *i.e.*, the sleeves and the back, destroyed the essential water resistant characteristic of the garment, thereby failing to meet the second requirement of item 376.56 TSUS. However, defendant's own witness testified that in damp conditions, water seepage through the corduroy inserts to the polyester fill and the inner lining of the garment would be unlikely.

Moreover, the testimony of plaintiff's witness that four per cent, at the most of the garment consisted of absorbent cotton corduroy, was unchallenged. Ninety six per cent of the garment, then, is comprised of acrylic-coated nylon, a water repellent fabric.

Given the directives of General Headnote 9(f)(iii), plaintiff has clearly prevailed on this question. If the presence of "significant quantities of other materials" is not enough to alter the essential characteristic of an article, then the insertion of *marginal* quantities of corduroy material

---

[9] The government does not appear to dispute that the fabric used in the imported winter jackets is regarded as a textile material, as required by the reference to Headnote 5 of Schedule 3 in item 376.56 TSUS.

cannot preclude the jackets here from being classified as "almost wholly of" a water repellent material. That essential water resistant quality of the nylon outer shell is not affected by the presence of the corduroy trim, even if that trim is located in areas on the garment prone to water exposure, as defendant advocates. The Court holds that the merchandise at issue is wholly or almost wholly of fabrics coated, filled or laminated with rubber or plastics within the meaning of item 376.56 TSUS.

Finally, in *Pacific Trail Sportswear* v. *United States*, 5 CIT 206 (1983), the Court relied, *inter alia*, on the principal of *stare decisis* applies, to overcome the presumption of correctness attaching to Customs' classification. "Since the question presented and the merchandise at issue in *A.N. Deringer* are so substantially similar to those of the present case, this court has concluded that *stare decisis* applies, and should be followed here." 5 CIT at 212. With virtually no significant factual or legal differences between *Deringer, Pacific Trail*, and this case, this Court also holds that *stare decisis* provides strong support for overruling Customs' erroneous classification.

## CONCLUSION

Based on the evidence presented at trial, controlling case law, and other interpretive principles, the Court concludes that plaintiff has overcome the presumption of correctness accorded to Customs' classification, and that the girls' winter jackets were improperly classified under 384.91 TSUS. These jackets are designed for skiing, thereby imparting protection against cold and snow when engaged in an outdoor winter activity similar to hunting and fishing, and are wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics. Thus, classification under item 376.56 TSUS is proper.